1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARCO RASHID,                          Case No. 2:23-cv-1826-CSK

12                 Plaintiff,               ORDER ON PARTIES' CROSS MOTIONS
                                            FOR SUMMARY JUDGMENT
13        v.
                                            (ECF Nos. 13, 17)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17        Plaintiff Marco Rashid seeks judicial review of a final decision by Defendant

18   Commissioner of Social Security denying an application for supplemental security

19   income.[1] In the summary judgment motion, Plaintiff contends the final decision of the

20   Commissioner contains legal error and is not supported by substantial evidence. Plaintiff

21   seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion,

22   filed a cross-motion for summary judgment, and seeks affirmance.

23        For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-

24   motion is GRANTED, and the final decision of the Commissioner decision is AFFIRMED.

25   / / /

26   / / /

27   _____

28   [1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and
     proceeds on the consent of all parties. (ECF Nos. 9, 10, 11.)

                                            1

1 | **I.     SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

2         The Social Security Act provides benefits for qualifying individuals unable to

3 "engage in any substantial gainful activity by reason of any medically determinable

4 physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the

5 "claimant") seeks Social Security disability benefits, the process for administratively

6 reviewing the request can consist of several stages, including: (1) an initial determination

7 by the Social Security Administration; (2) reconsideration; (3) a hearing before an

8 Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the

9 Social Security Appeals Council. 20 C.F.R. § 416.1400(a).

10        At the hearing stage, the ALJ is to hear testimony from the claimant and other

11 witnesses, accept into evidence relevant documents, and issue a written decision based

12 on a preponderance of the evidence in the record. 20 C.F.R. § 416.1429. In evaluating a

13 claimant's eligibility, the ALJ is to apply the following five-step analysis:

14 **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.

15
16 **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.

17 **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.

18
19 **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.

20 **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.
21

22 *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 416.920(a)(4). The

23 burden of proof rests with the claimant through step four, and with the Commissioner at

24 step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant

25 not disabled, and the Social Security Appeals Council declines review, the ALJ's

26 decision becomes the final decision of the Commissioner. *Brewes v. Comm'r*, 682 F.3d

27 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-

28 final agency action). At that point, the claimant may seek judicial review of the

1    Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

2         The district court may enter a judgment affirming, modifying, or reversing the final

3    decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial

4    review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has

5    repeatedly admonished that the court cannot manufacture arguments for the plaintiff.

6    *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep.*

7    *Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court

8    should "review only issues which are argued specifically and distinctly," and noting a

9    party who fails to raise and explain a claim of error waives it).

10        A district court may reverse the Commissioner's denial of benefits only if the ALJ's

11   decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d.

12   at 1154. Substantial evidence is "more than a mere scintilla" but "less than a

13   preponderance," i.e., "such relevant evidence as a reasonable mind might accept as

14   adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in

15   the record that both supports and detracts from the ALJ's conclusion, but it may not

16   affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872,

17   875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in

18   testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision

19   must be upheld where the evidence is susceptible to more than one rational

20   interpretation, or where any error is harmless. *Id.*

21   **II.     FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

22        On August 13, 2020, Plaintiff applied for supplemental security income under Title

23   XVI of the Social Security Act, alleging he has been disabled since his application date.

24   Administrative Transcript ("AT") 190 (available at ECF No. 12). Plaintiff claimed disability

25   due to mental health issues; suicidal tendencies; need for surgery on his back, foot, and

26   anus; anal fissure; pain; discomfort; and mental breakdowns. *See* AT 61. Plaintiff's

27   application was denied initially and upon reconsideration; he sought review before an

28   ALJ. AT 82, 105, 120. On March 4, 2022, Plaintiff appeared at a remote hearing before

1    an ALJ, which quickly adjourned because Plaintiff stated he wished to obtain counsel.

2    AT 54-59. On June 24, 2022, Plaintiff appeared with a representative at a remote

3    hearing before the ALJ, where Plaintiff testified about his impairments and where a

4    vocational expert testified about hypothetical available jobs. AT 34-53.

5          On July 6, 2022, the ALJ issued a decision finding Plaintiff was not disabled. AT

6    10-26. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

7    since August 13, 2020. AT 12. At step two, the ALJ determined Plaintiff had the following

8    severe impairments:  degenerative disc disease of the lumbar spine, depressive

9    disorder, and anxiety disorder. AT 13. The ALJ found the evidence surrounding Plaintiff's

10    asthma, right foot pain prostatitis, pelvic floor dysfunction, and rectal pain showed these

11    issues had no more than a minimal effect on his ability to carry out basic work activities.

12    AT 13-14. Thus, these conditions were deemed non-severe. *Id.*

13          At step three, the ALJ found Plaintiff's combination of impairments did not meet or

14    medically equal any Listing. AT 14 (citing 20 C.F.R Part 404, Subpart P, Appendix 1).

15    For Plaintiff's physical impairments, the ALJ considered Listings 1.15 (nerve root spinal

16    disorder), 1.16 (lumbar spinal stenosis), 1.18 (major joint abnormality), 3.03 (asthma),

17    5.02 (gastrointestinal hemorrhaging), and for his mental impairments, Listings 12.04

18    (depression) and 12.06 (anxiety). The ALJ applied the "Paragraph B" criteria[2] for the

19    mental impairments, finding Plaintiff moderately limited in interacting with others, but

20    finding no limitations in understanding, remembering, or applying information; in

21    concentrating, persisting or maintaining pace; or in adapting or managing oneself. AT

22    14-16. In making these findings, the ALJ noted conflicts in the record between Plaintiff's

23    testimony, the medical evidence, and the medical opinions in the record. *Id.*

24    _____

25    [2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders
     limit their functioning:  understanding, remembering, or applying information; interacting

26    with others; concentrating, persisting, or maintaining pace; and adapting or managing
     oneself. To be found disabled under the Paragraph B categories, the mental disorder

27    must result in an "extreme" limitation of one, or "marked" limitation of two, of the four
     areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental

28    Disorders, sub. A.2.b.

1    The ALJ then found Plaintiff had the residual functional capacity to perform light

2 work (20 C.F.R. § 416.967(b)), except that Plaintiff could only:

3           Occasionally crawl and climb ladders, ropes, or scaffolds;
           frequently balance, stoop, kneel, crouch, and climb ramps or
4           stairs; occasionally interact with the public, in the work
           setting, and with coworkers and supervisors; and no tandem
5           tasks involved.

6 AT 16. In crafting this residual functional capacity, the ALJ stated he considered

7 Plaintiff's statements from his 2020-2021 disability and function reports and from the

8 June 24, 2022 hearing. AT 17-18 (citing AT 38-48, 239, 258-66, 286, 299). The ALJ also

9 considered the medical evidence in the record from 2019-2022, the medical opinions

10 from the examining doctors, and the prior administrative medical findings. *See* AT 18-24.

11    Based on the residual functional capacity, the ALJ determined at step four that

12 Plaintiff was incapable of performing past relevant work. AT 24. However, at step five,

13 the ALJ found Plaintiff could perform other jobs requiring light exertion and SVP 2,[3]

14 including:  (i) garment sorter, 54,500 jobs nationally; (ii) electronics worker, 32,900 jobs

15 nationally; and (iii) "assembler, small products I," 305,600 jobs nationally. AT 25. The

16 ALJ found Plaintiff not disabled during the relevant period. AT 26.

17    On June 27, 2023, the Appeals Council rejected Plaintiff's appeal. AT 1-3. Plaintiff

18 then filed this action requesting judicial review of the Commissioner's final decision, and

19 the parties filed cross-motions for summary judgment. (ECF Nos. 1, 13, 17.)

20 **III.    ISSUES PRESENTED FOR REVIEW**

21    Plaintiff contends the ALJ erred by:  (A) failing to offer clear and convincing

22 reasons for rejecting the more severe aspects of his symptom testimony; and (B) failing

23 to develop the record regarding a January 2022 blood test. (ECF No. 13.) Plaintiff seeks

24 a remand for further proceedings. (*Id.*)

25 _____
   [3]  "Light" in the ALJ's step-five determination references light work, as defined by
26 20 C.F.R. § 416.967(b).
       "SVP" is "specific vocational preparation," defined as "the amount of lapsed time
27 required by a typical worker to learn the techniques, acquire the information, and
   develop the facility needed for average performance in a specific job-worker situation."
28 *See* DOT, App. C, § II, available at 1991 WL 688702.

1    The Commissioner argues the ALJ:  (A) reasonably evaluated Plaintiff's

2    subjective symptom testimony; and (B) had no duty to develop the record further. (ECF

3    No. 17.) Thus, the Commissioner contends the decision as a whole is free from legal

4    error, is supported by substantial evidence, and should be affirmed. (*Id.*)

5    **IV.    DISCUSSION**

6         **A.    Subjective Symptom Testimony**

7              1.    Legal Standards

8         A claimant's statements of subjective symptoms alone are insufficient grounds to

9    establish disability. 20 C.F.R § 416.929(a). If an ALJ was required to believe every

10   allegation of pain or impairment, disability benefits would run afoul of the Social Security

11   Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir. 2014). In

12   evaluating the extent to which an ALJ must credit the claimant's report of their

13   symptoms, the Ninth Circuit has stated:

14              First, the ALJ must determine whether the claimant has presented
                objective medical evidence of an underlying impairment which could
15              reasonably be expected to produce the pain or other symptoms
                alleged. In this analysis, the claimant is not required to show that her
16              impairment could reasonably be expected to cause the severity of the
                symptom she has alleged; she need only show that it could
17              reasonably have caused some degree of the symptom. Nor must a
                claimant produce objective medical evidence of the pain or fatigue
18              itself, or the severity thereof.

19              If the claimant satisfies the first step of this analysis, and there is no
                evidence of malingering, the ALJ can reject the claimant's testimony
20              about the severity of her symptoms only by offering specific, clear and
                convincing reasons for doing so. This is not an easy requirement to
21              meet: The clear and convincing standard is the most demanding
                required in Social Security cases.
22

23   *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's

24   reasons for discounting or rejecting a claimant's subjective symptom testimony must be

25   sufficiently specific to allow a reviewing court to conclude the adjudicator did not

26   arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

27   (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing

28   reasons" for discounting or rejecting a claimant's subjective symptom testimony include:

1    prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

2    2007); inconsistencies between the plaintiff's testimony and conduct (including daily

3    activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged

4    symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261

5    F.3d 853, 857 (9th Cir. 2001); or an unexplained or inadequately explained failure to

6    follow a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

7    1991). A lack of corroborating, objective medical evidence alone is insufficient grounds

8    for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may

9    consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

10                   2.      <u>Symptom Testimony Regarding Physical Impairments</u>

11           Regarding Plaintiff's statements that he had disabling physical pain such that he

12   could not work, the ALJ began by summarizing Plaintiff's statements in his 2020-2021

13   disability and function reports and at the June 24, 2022 hearing. AT 17-18. Plaintiff

14   asserted he "was not able to sit for more than 10 minutes or stand or drive more than 10

15   minutes" because he had "chronic pain 24 hours a day" in his spine. AT 286. Plaintiff

16   also stated he could not wear pants, shoes, or socks because of his legs going numb

17   from the deteriorating discs, pelvic dysfunction, anal fissure, and unbalanced hips. *Id*.

18   Plaintiff asserted he had muscle spasms, nerve damage, and walked slow with a twitch,

19   had to constantly change position due to pain, and had to use a cane when the pain

20   made it hard to stand. AT 259, 265, 299. Plaintiff reasserted many of these things at the

21   June 24, 2022 hearing, adding he could only "hold one grandchild at a time" (15 pounds

22   and 12 pounds). AT 41-46. Plaintiff stated he was prescribed baclofen and gabapentin

23   for pain, and he confirmed that surgery and epidural injections had been recommended

24   but were delayed due to the COVID-19 pandemic. AT 42. The ALJ found Plaintiff's

25   symptoms could reasonably be expected to cause the alleged symptoms, but the

26   "intensity, persistence and limiting effects of these symptoms are not entirely consistent

27   with the medical evidence and other evidence in the record for the reasons explained in

28   this decision." AT 18.

1      First, the ALJ properly discounted Plaintiff's symptom testimony by noting the

2  conflicts between his statements and the objective medical evidence. AT 18. The ALJ

3  cited records showing Plaintiff had "multilevel disc herniations without high grade spinal

4  stenosis, moderate narrowing of the right L4-L5 foramen, and possible impingement

5  upon the extraforaminal portion of the left L3 nerve sleeve" in June 2019 and August

6  2020. AT 492, 496. At a December 31, 2019 exam, Plaintiff reported 10/10 pain in his

7  spine, buttock, and thigh, and the examiner confirmed lumbar tenderness and pain with

8  motion, positive facet loading, and positive straight leg raise bilaterally. AT 1006-08.

9  However, this exam also found strength of 4+/5, intact reflexes and normal gait. AT

10  1008. Other exams of Plaintiff's spine from 2020-2022 confirmed spinal tenderness with

11  spasms and reduced range of motion (AT 538, 934), but also full strength in his hips and

12  legs, negative straight leg raising, intact sensation and reflexes, and normal gait (AT

13  541, 544, 547, 550, 556, 564, 569, 576, 891, 934, 970). Plaintiff was prescribed anti-

14  inflammatory medication and pregabalin (Lyrica) in December 2019, and subsequently

15  reported reduced pain of 6/10 in February 2020, December 2020, and February 2021.

16  AT 999-1003, 1008. Records in 2022 showed moderate foraminal narrowing extending

17  into Plaintiff's spine at L1- L5, mild narrowing at L5-S1, and facet effusions at L2-L4. AT

18  1014. The ALJ also noted Plaintiff's mentioning of sensory neuropathy to his providers,

19  but noted the exams showed Plaintiff's sensation was intact. AT 19 (citing AT 541, 544,

20  547, 550, 556, 564, 891, 1004, 1008).

21      Additionally, the ALJ noted the results of a November 18, 2020 exam performed

22  by Dr. Shahid Ali, M.D., which showed Plaintiff could sit, stand, walk, and perform other

23  postural activities without difficulty. AT 842-45. This included that Plaintiff was able to

24  walk into the exam room without assistance, got on and off the exam table without

25  difficulty, and could take his shoes off without difficulty. AT 842. Dr. Ali opined Plaintiff

26  could lift/carry at the medium level (50 pounds occasionally and 25 pounds frequently);

27  had no limitation sitting, standing, or walking; could frequently climb, balance, stoop, and

28  kneel; and never crouch or crawl. *Id.* The ALJ found this opinion partially persuasive,

adopting most of Dr. Ali's opined limitations into the residual functional capacity, but reducing the lift/carry limitations to the light level (20 pounds occasionally and 10 pounds frequently) due to Plaintiff developing facet effusions and mild giveaway weakness in 2022. AT 22 (citing AT 1004, 1008, 1014). The ALJ also found partially persuasive the opinion of Dr. J. Lane, M.D., expressed on March 11, 2021 during the reconsideration stage. AT 23 (citing AT 96-98). The ALJ adopted Dr. Lane's opinion Plaintiff could frequently crouch or crawl given the "reduction in postural maneuvers," and rejected Dr. Lane's assignment of medium work for the same reasons as with Dr. Ali. AT 23. Plaintiff did not challenge the ALJ's assessment of the medical opinions in the record, and so waived any challenge to these findings. *See Mata*, 2014 WL 5472784, at *4.

The ALJ was within his authority to resolve the conflict between the medical and opinion evidence, which supports some physical limitations at the light level, and Plaintiff's testimony that he could only sit, stand, and walk for no more than 10 minutes at a time; had to use a cane to walk; and could not wear pants, shoes, or socks due to 24 hour a day pain. *See Ford*, 950 F.3d at 1154. Objective medical evidence can be cited when evaluating the severity of Plaintiff's testimony, and the ALJ did not err in finding Plaintiff's stated severe limitations to be contradicted by the medical evidence in the record. *See Rollins*, 261 F.3d at 857; *see also Marshall v. Saul*, 830 F. App'x 179, 181 (9th Cir. 2020) (finding clear and convincing reasons to reject the plaintiff's symptom testimony where there was a "disjunction between his statements that [he] could not walk and medical evidence showing that his gait was normal").

Plaintiff contends the ALJ's rationale on this point is not clear and convincing because the ALJ relied too heavily on Dr. Ali's opinion and did not account for other medical records. (ECF No. 13 at 10.) For support, Plaintiff points to medical records from his pain management provider generated June 3, 2019, December 31, 2019, and February 4, 2020 that Plaintiff argues demonstrates his increased physical impairments and confirms Plaintiff's subjective complaints. *See* AT 1003-10. However, as noted above, the ALJ took account of these records in rejecting Dr. Ali's (and Dr. Lane's)

1   assignment of medium work. *See* AT 22-23 ("I have further reduced the claimant's lifting

2   and carrying to the light level given the new imaging with some facet effusions and with

3   other exams showing mild giveaway weakness of 4+ out of 5.") (citing AT 1004, 1008,

4   1014). Thus, the Court finds the ALJ did not ignore the evidence cited by Plaintiff. *See*

5   *Wesselius v. Kijakazi*, 2021 WL 4948928, at *1 (9th Cir. Oct. 25, 2021) (stating an ALJ's

6   decision was not a result of "cherry-picking" where the ALJ's findings were supported by

7   a broad set of exams covering the entire relevant time period); *cf. Ghanim v. Colvin*, 763

8   F.3d 1154, 1164 (9th Cir. 2014) (finding error where the ALJ's decision did not account

9   for record "as a whole," but rather relied on "cherry picked" evidence).

10          Instead, the decision demonstrates the ALJ fulfilled his duty to address conflicts in

11   the record; the Court has no authority to reweigh Plaintiff's cited evidence to arrive at a

12   different conclusion. *See Ford*, 950 F.3d at 1154.

13          In addition to the medical evidence, the ALJ found Plaintiff's symptoms were not

14   as severe as he stated because his treatment "remained conservative" and because he

15   failed to take prescribed medications despite assertions he found some relief with those

16   medications. AT 20 (citing AT 999-1001). Plaintiff contends the ALJ failed to note that

17   Plaintiff did not want to become addicted to opiates, that his insurance would not cover

18   the Lyrica in February 2020, and that the COVID-19 pandemic delayed his ability to

19   receive epidural shots. (ECF No. 13 at 10.) However, the ALJ also cited as proof of

20   Plaintiff's conservative treatment his prescriptions of topical creams, muscle relaxants,

21   Tylenol, and gabapentin (AT 934, 971), his being referred to physical therapy (AT 896)

22   and home exercise (AT 935), and his reporting of moderate relief with adjustments to his

23   prescription regimen (AT 999). These were additional, permissible reasons for the ALJ to

24   reject the more limiting aspects of Plaintiff's symptom testimony. *See Parra*, 481 F.3d at

25   750-51 (prescription of conservative treatment); *Bunnell*, 947 F.2d at 346 (unexplained

26   or inadequately explained failure to follow a prescribed course of treatment).

27          Finally, the ALJ noted Plaintiff was able to do his personal care, fix simple meals,

28   and do household chores. AT 20 (citing AT 260, 842). Inconsistencies between a

plaintiff's testimony and daily activities is an additional permissible reason to reject symptom testimony. *See Burch*, 400 F.3d at 680-81 (finding symptom statements contradicted by the plaintiff's ability to care for her personal needs, cook, clean and shop). While the ALJ's analysis on this point is cursory, it rationally supports the ALJ's conclusion Plaintiff was not as limited as he asserted in his testimony. *See id.* at 681 (stating that while the ALJ's determination on daily activities "may also admit of an interpretation more favorable to [the plaintiff], the ALJ's interpretation was rational" and must be upheld where susceptible to more than one rational interpretation). Plaintiff did not explicitly challenge the ALJ's findings in her opening brief, and so waived any challenge on the ALJ's findings here. *See Mata*, 2014 WL 5472784, at *4.

In sum, the ALJ did not wholly discount Plaintiff's symptom testimony or deem him able to perform any job in the national economy. Instead, the ALJ found Plaintiff was limited to light work, with many additional physical limitations included in the residual functional capacity. Under the regulations, Plaintiff's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 416.929(a). The Court finds the ALJ provided clear and convincing reasons for discounting the more severe aspects of Plaintiff's symptom testimony regarding his physical impairments, such that the Court does not find Plaintiff's testimony was arbitrarily discredited. *See Brown-Hunter*, 806 F.3d at 493.

3.    Symptom Testimony Regarding Mental Impairments

Regarding Plaintiff's statements that he could not work due to his disabling mental impairments, the ALJ began by summarizing Plaintiff's statements in his 2020-2021 disability and function reports and at the June 24, 2022 hearing. AT 17-18. This included Plaintiff's "wanting to give up on life" and having "mental break downs," as well as his assertions that his walking impairments "affected his mind," that his physical pain caused his depression and anxiety, and that these things interfered with his concentration. AT 47-48, 239, 299. Plaintiff stated he was "in the process of seeing a psychiatrist" but ended his last psychiatric appointment in 2020 "because he could not concentrate due to

1   the pain." AT 42. Plaintiff stated he took Prozac and Trazodone to help him sleep. *Id.*

2   The ALJ found Plaintiff's symptoms could reasonably be expected to cause the alleged

3   symptoms, but did not find the "intensity, persistence and limiting effects of these

4   symptoms . . .entirely consistent with the medical evidence and other evidence in the

5   record for the reasons explained in this decision." AT 18.

6          First, the ALJ properly discounted Plaintiff's testimony by noting the conflicts

7   between his testimony and the medical record. AT 20. The ALJ noted Plaintiff's reporting

8   of suicidal ideation, anxiety, and depression in June 2020. AT 457. Plaintiff attended a

9   behavioral health appointment in August 2020, where he was "initially oppositional,"

10  anxious, sad, and discussed his history of depression and relationship problems. AT

11  524. However, the ALJ also noted Plaintiff and the therapist established rapport and

12  developed trust; Plaintiff presented as oriented with normal attention, concentration, and

13  intact memory; and the therapist referred Plaintiff to medication management. *Id.* At a

14  November 13, 2020 mental status exam, Plaintiff was cooperative, engaging with normal

15  speech, had linear/logical thought processes, intact abstraction and judgment, and

16  adequate attention, concentration, and memory. AT 835-38. The ALJ noted additional

17  records throughout 2021-2022 supporting the presence of anxiety and depression, but

18  also demonstrating normal memory, orientation, cognition, mood, and affect. AT 21

19  (citing AT 528, 553, 556, 891, 930, 934, 954, 957-58, 962, 967, 970). Plaintiff was

20  prescribed Prozac and Vistaril in November 2020. AT 849. In early 2022, Plaintiff told his

21  health provider he was not taking his prescribed medications, was not attending

22  counseling, and was given a crisis intervention resource list. AT 958.

23         Additionally, the ALJ noted the opinions from Drs. F. Mateus, M.D., and Anna

24  Franco, Psy.D., who reviewed Plaintiff's records in December 2020 and March 2021 at

25  the initial and reconsideration stages. AT 75-76, 92-94. These doctors opined Plaintiff

26  should be limited to occasional interaction with coworkers, supervisors, and the public,

27  but otherwise was not limited due to his mental impairments. *Id.* The ALJ adopted this

28  limitation into Plaintiff's residual functional capacity, finding the doctors' opinions

                                            12

persuasive because of their cited support and consistency with the record. AT 23-24. Plaintiff waived any challenge to the ALJ's findings on these medical opinions by failing to address the issue in the briefing. *See Mata*, 2014 WL 5472784, at *4.

The ALJ was within his authority to resolve the conflict between the medical and opinion evidence, which supports some mental limitations, and Plaintiff's statements that he could not work due to his depression and anxiety, which he alleged was caused by his physical pain, affected his mind, and interfered with his concentration. AT 47-48, 239, 299. Objective medical evidence can be cited when evaluating the severity of Plaintiff's testimony, and the ALJ did not err in finding Plaintiff's stated severe limitations were contradicted by the medical evidence. *See Rollins*, 261 F.3d at 857; *see also Tidwell v. Saul*, 836 F. App'x 523, 525-26 (9th Cir. 2020) (finding in part that medical evidence showing improvements in mental health undercut such expansive limitations that it was "impossible" to work around others, he had difficulties concentrating and was unable to follow instructions); *Gregg v. Astrue*, 2009 WL 3295117, at *4 (E.D. Wash. Oct. 13, 2009) (discounting the plaintiff's symptom testimony in part based on the medical evidence because it was not consistent with the plaintiff's broad assertions she could not work anymore due to worsening mental illness, nervousness around people, poor memory, inability to focus, and experience of panic attacks).

Plaintiff contends the ALJ's rationale on this point is not clear and convincing because other evidence supports the more severe aspects of his symptom testimony, including records showing he only held down part-time jobs with accommodations for a short time but quit, missed mental health appointments, clashed with staff at other appointments, and often presented with severe depression. (ECF No. 13 at 10-11.) However, as noted above, the ALJ took account of many of these records, finding Plaintiff's depression and anxiety severe at step two and assigning a limitation of occasional contact with others in the residual functional capacity. AT 13, 16. The Court finds the ALJ did not ignore the evidence cited by Plaintiff, and did not "cherry pick" only certain items in the record. *See Wesselius v. Kijakazi*, 2021 WL 4948928, at *1. The

1  decision demonstrates the ALJ fulfilled his duty to address conflicts in the record; the

2  Court has no authority to reweigh Plaintiff's cited evidence to arrive at a different

3  conclusion. *See Ford*, 950 F.3d at 1154.

4       In addition to the medical evidence, the ALJ noted that despite Plaintiff being

5  prescribed Prozac and Vistaril in November 2020 (AT 849), he stated in early 2022 that

6  he did not take these medications and did not attend counseling. AT 958. This was an

7  additional, permissible reason for the ALJ to reject the more limiting aspects of Plaintiff's

8  symptom testimony. *See Bunnell*, 947 F.2d at 346 (unexplained or inadequately

9  explained failure to follow a prescribed course of treatment).

10       In sum, the ALJ did not wholly discount Plaintiff's symptom statements or deem

11  him able to perform any job in the national economy. Instead, the ALJ found Plaintiff was

12  limited to light work in the residual functional capacity, including a restriction to

13  occasional interactions with others. AT 16. Under the regulations, Plaintiff's statements

14  of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R

15  § 416.929(a). The Court finds the ALJ provided clear and convincing reasons for

16  discounting the more severe aspects of Plaintiff's symptom testimony regarding his

17  mental impairments, such that the Court does not find Plaintiff's testimony was arbitrarily

18  discredited. *See Brown-Hunter*, 806 F.3d at 493.

19      **B.**    **Duty to Develop the Record**

20       Plaintiff also contends the ALJ erred by failing to develop the record regarding a

21  January 2022 blood test. (ECF No. 13.)

22       1.    <u>Legal Standards</u>

23       An ALJ must "fully and fairly [to] develop the record and to assure that the

24  claimant's interests are considered." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir.

25  2003). This includes the duty to develop the record when the evidence is ambiguous or

26  when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v.*

27  *Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ's duty to develop the record

28  exists even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242

1    F.3d 1144, 1150 (9th Cir. 2001).

2                 2.      <u>Analysis</u>

3         Plaintiff contends the ALJ failed to fully and fairly develop the record. (ECF No. 13

4    at 12-13.) Plaintiff cites a record from January 21, 2022 from Dr. El-Hadi Mouderres,

5    M.D., noting Plaintiff's blood work showed "positive ANA [antinuclear antibody]." AT

6    1017. Dr. Mouderres recommended a referral to a rheumatologist because he believed

7    Plaintiff's neuropathy was "related to most likely autoimmune disease." AT 1013. Plaintiff

8    notes the ALJ failed to assign any limitations for Plaintiff's neuropathy based on Dr.

9    Mouderres's referral and the blood test, and so argues had a duty to develop the record

10    further if the evidence was inadequate for a proper finding. The Court disagrees.

11         First, the ALJ noted Plaintiff's assertions to his health providers that he had

12    sensory neuropathy, and the ALJ specifically cited multiple records from April 2019

13    through February 25, 2021 showing Plaintiff's sensation was "intact." AT 19 (citing AT

14    541, 544, 547, 550, 556, 564, 891, 1004, 1008). This evidence does not demonstrate a

15    worsening of Plaintiff's sensory neuropathy, and the ALJ was not required to develop the

16    record further. *See DeLeon v. Kijakazi*, 2023 WL 8242132, at *9 (E.D. Cal. Nov. 28,

17    2023) (rejecting the plaintiff's argument where the evidence cited by the plaintiff

18    appeared cherry picked and did not show a worsening of the plaintiff's conditions, and

19    where the remainder of the record consistently showed stable conditions); *Martin v.*

20    *Colvin*, 2015 WL 3631623, at *10 (C.D. Cal. June 10, 2015) (finding that a physician's

21    recommendation for further testing did not create a duty to develop the record further

22    when the "extensive" record supported the ALJ's findings).

23         Second, while courts in this circuit have held the duty to develop the record exists

24    even when counsel represents the plaintiff, this is balanced against the principle that

25    counsel "must raise all issues and evidence at their administrative hearings in order to

26    preserve them on appeal." *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

27    Plaintiff was represented by counsel at the June 24, 2022 hearing before the ALJ, as

28    well as during Plaintiff's appeal to the Appeals Council. *See* AT 3, 34. The blood test

1   issue and Dr. Mouderres's referral was not raised by Plaintiff at either proceeding.

2   Courts have found the plaintiff waives the issue under these circumstances. *See*

3   *Newbanks v. Berryhill*, 2017 WL 2889022, at *2 (C.D. Cal. July 6, 2017).

4        For these reasons, the Court finds the ALJ had no duty to develop the record

5   further concerning the January 2022 blood test and Dr. Mouderres's referral

6   recommendation.

7   **V.   CONCLUSION**

8        Having addressed all of the points of error raised by Plaintiff, the Court finds the

9   ALJ's decision otherwise supported by substantial evidence in the record and free from

10  legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if

11  the ALJ's decision "contains legal error or is not supported by substantial evidence").

12  **ORDER**

13       Accordingly, the Court ORDERS/RECOMMENDS:

14  1.    Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;

15  2.    The Commissioner's cross-motion (ECF No. 17) is GRANTED;

16  3.    The final decision of the Commissioner is AFFIRMED; and

17  4.    The Clerk of the Court is directed to CLOSE this case.

18

19  Dated:  September 25, 2024

20                         CHI SOO KIM

21                         UNITED STATES MAGISTRATE JUDGE

22  3, rash.1826

23

24

25

26

27

28